AUTO-OWNERS MUTUAL INSURANCE COMPANY, APPELLEE, *v.* LEWIS, GUARDIAN, APPELLANT, ET AL.

[Cite as Auto-Owners Mut. Ins. Co. *v.* Lewis (1984), 10 Ohio St. 3d 156.]

(No. 83-1202—Decided April 25, 1984.)

*Wiles, Doucher, Van Buren, Boyle & Casey Co., L.P.A.,* and *Mr. Thomas J. Keener,* for appellee.

*Mr. William L. Stehle,* for appellant.

CELEBREZZE, C.J. The appeal presents three issues for our review. The first is whether the terms of the automobile insurance policy under consideration permit stacking of uninsured motorist coverages. The second issue is whether the medical expense coverage may be stacked. Finally, we are faced with the issue of whether appellant, in his individual and representative capacity, is entitled to the full amount of the applicable coverage in each capacity.

I

The law regarding uninsured motorist coverage has undergone extensive treatment in the past several years. In fact, the issue of whether uninsured motorist coverages in a multi-vehicle automobile insurance policy will be stacked has been examined on at least one other occasion by this court. In *Weemhoff* v. *Cincinnati Ins. Co.* (1975), 41 Ohio St. 2d 231 [70 O.O.2d 428], this court held:

"Where the terms of an insurance policy afford uninsured motorist coverage for two automobiles, and limit the insurer's liability to a certain sum 'per person' on each automobile, such limit on each vehicle cannot be added together to provide coverage in excess of that stated in the policy."

Three years later, however, this court held in *Grange Mut. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58, 63 [8 O.O.3d 70], that:

"It is our decision that appellees herein may stack all uninsured motorist coverages for which they have paid a separate premium in a separate policy of insurance."

The facts in *Volkmann, supra,* indicate that the separate policies were issued by the same insurance company and were virtually identical except that they covered different vehicles.

Appellant here is seeking to stack the uninsured motorist coverages contained in a single insurance policy insuring six vehicles where separate premiums are paid for uninsured motorist coverage on each vehicle. Appellant contends that if stacking is not allowed, he will not be provided the coverage that he reasonably expected when he paid six separate premiums for uninsured motorist coverage. Appellee suggests that this court rejected a similar argument in *Weemhoff,* and that the risk assumed by the insurer increases when multiple vehicles are insured thus justifying each premium.

The personal nature of uninsured motorist coverage is not subject to dispute. The purpose of uninsured motorist coverage, and its mandatory offering,[1] is to afford the insured additional protection in the event of an accident with an uninsured motorist, not to provide coverage to a vehicle. See *Kish* v. *Central Natl. Ins. Group* (1981), 67 Ohio St. 2d 41, 44 [21 O.O.3d 26]; *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 596 [23 O.O.3d 495]. As a consequence, appellee's argument that stacking of uninsured motorist coverages should not be permitted due to the additional risk of insuring more than one vehicle is not persuasive. " '* * * [Uninsured motorist] coverage protects against loss due to bodily injuries or death by another who is at fault. It should ordinarily attach to an insured, not to a vehicle.' " *Ady, supra,* at 596; *Orris* v. *Claudio* (1980), 63 Ohio St. 2d 140, 145 [17 O.O.3d 85], dissenting opinion of Celebrezze, C.J.

Ultimately the sole distinguishing characteristic between *Weemhoff* and *Volkmann* is that the former dealt with uninsured motorist coverages within a single policy while the latter dealt with uninsured motorist coverages in separate, identical policies. There is little difference, if any, between paying separate premiums for uninsured motorist coverages within a single policy and purchasing identical policies for different vehicles from the same insurance company. As one court has stated:

" '* * * Whether the insurance company issued one or two policies of insurance logically should have no bearing on whether the uninsured motorist coverages can be stacked. * * *' " *Davis* v. *Hughes* (1981), 229 Kan. 91, 98, 622 P. 2d 641, 648.

In our view, the continued presence of *Weemhoff* in light of *Volkmann* creates the anomalous situation of allowing inter-policy stacking of coverages in identical policies but prohibiting intra-policy stacking where separate premiums have been paid for the coverages. *Grimes* v. *Concord General Mut. Ins. Co.* (1980), 120 N.H. 718, 724, 422 A. 2d 1312, 1316, dissenting opinion.

---

[1] See R.C. 3937.18.

It follows that *Weemhoff* should have no continued application. Consequently, we hereby overrule *Weemhoff* and hold that where an insured has paid separate premiums in a single policy providing several vehicles with uninsured motorist coverage, the insured is entitled to recover under the uninsured motorist provision of the policy an amount up to the aggregate sum of the uninsured motorist coverages. Accord *Taft* v. *Cerwonka* (R.I. 1981), 433 A. 2d 215, 219. We reiterate, however, our admonition in *Volkmann, supra,* at 64, that the insured may not " ' "pyramid separate coverages so as to recover more than the actual loss." ' "

Accordingly, the judgment of the court of appeals is reversed as to this issue.[2]

## II

The second issue is whether appellant may likewise stack the medical expense coverages contained in the policy. Appellant concedes that the medical expense coverage (denominated in the instant policy as "Passenger Accident Coverage") does not implicate the same public policy considerations as does uninsured motorist coverage and that, in order to allow stacking of medical expense coverage, the policy language must so allow. Appellant suggests that the policy is ambiguous with respect to coverage and, as such, construction of the policy should be in favor of the insured and against the drafter.

On the other hand, appellee refers to the following policy language as limiting medical expense coverage to $2,000:

"* * * The limit of liability expressed in the Declarations with respect to Coverages C. 1 and C. 2 [the medical expense coverage] as applicable to 'each person' is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury as the result of any one accident."

In addition, the policy "Declarations" state:

"Passenger Accident Coverage written on more than one vehicle does not increase the stated limit per person."

We agree with the assessment of the court of appeals that:

"* * * the clear language of the policy before us indicates that there is only one medical payment coverage and that the single payment limit for that coverage applies collectively to all vehicles for which a premium has been paid * * *."

The purported ambiguity in the policy as advanced by appellant relates to the particular paragraph in the policy which affords coverage for Fred W. Lewis' medical expenses, and not to whether medical expense coverages may be stacked. Thus, the unambiguous limitations in the policy control and appellant is not entitled to stack medical expense coverage. See *Grange Mut.*

---

[2] R.C. 3937.18(E), effective June 25, 1980 (now R.C. 3937.18[G]), permitted the inclusion in uninsured motorist coverages of anti-stacking provisions. See *Karabin* v. *State Auto. Mut. Ins. Co.* (1984), 10 Ohio St. 3d 163, decided this day.

*Cas. Co.* v. *Volkmann* (1977), 57 Ohio App. 2d 163, 169 [11 O.O.3d 162], affirmed (1978), 54 Ohio St. 2d 58 [8 O.O.3d 70].

Accordingly, the judgment of the court of appeals is affirmed as to this issue.

### III

The final issue for our determination is whether the policy limits are available to appellant individually and again in his representative capacity.

We recently faced a similar question in *Sexton* v. *State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St. 2d 431 [23 O.O.3d 385]. In *Sexton,* the named insured's minor daughter was killed in an automobile accident with an uninsured motorist. The named insured's daughter was not an insured under the policy, but the named insured was obligated by a divorce decree to pay the medical and funeral expenses attendant to his daughter's death. We held that, since the named insured was legally entitled to recover damages for his daughter's wrongful death, the insurer was bound to extend coverage to the named insured even though the named insured himself did not actually sustain the bodily injury.

Paragraph one of the syllabus in *Sexton* holds:

"R.C. 3937.18 provides protection for insured persons for damage for bodily injury and death, *inter alia,* which they are legally entitled to recover from owners or operators of uninsured motor vehicles."

Appellant argues that *Sexton* allows the appellant, in both his individual and representative capacities, to recover up to the maximum policy limits in each claim because both appellant and his son are independently entitled to recover damages — appellant for the loss of his son's services and his son for personal injuries. In other words, given our disposition of the first issue, appellant would argue that he may recover up to $600,000 individually and up to $600,000 on behalf of his son. Appellee maintains that, because appellant's individual action is derivative of his son's, the limit of the policy for appellant in both capacities should be the amount recoverable by the person actually injured. Appellee argues that since only one person insured by the policy was actually injured, Fred W. Lewis, coverage under the policy under any circumstance is limited to what Fred could have received under the policy, *i.e.,* $600,000.

This court stated in *Sexton, supra,* at 435:

"* * * [U]nder the wrongful death statutes, Sexton would have a cause of action for recovery of his pecuniary damages against the negligent motorist. This satisfies the requirement of R.C. 3937.18 that he be legally entitled to recover damages."

There is no question that appellant's son, being represented by appellant as guardian, is entitled to coverage for his personal injuries under the uninsured motorist provision of the policy at hand.[3] Thus, if appellant is in-

---

[3] Appellee has not appealed the determination that Pennington was not an insured under the policy.

dividually entitled to recover damages arising from his son's accident, appellant is equally entitled to coverage under the uninsured motorist provision in the policy.

We held in *Whitehead* v. *Gen. Tel. Co.* (1969), 20 Ohio St. 2d 108 [49 O.O.2d 435], paragraph three of the syllabus, that:

"Where a defendant negligently causes injury to a minor child, that single wrong gives rise to two separate and distinct causes of action: an action by the minor child for his personal injuries and a derivative action in favor of the parents of the child for the loss of his services and medical expenses." See, also, *Grindell* v. *Huber* (1971), 28 Ohio St. 2d 71 [57 O.O.2d 259], paragraph one of the syllabus.

It becomes apparent that appellant's individual and representative claims are separate and distinct, thereby entitling each to full coverage under the policy. Appellee's characterization of appellant's individual action as being derivative of his son's is of no significance for as we stated in *Sexton, supra:*

"Sexton's financial loss can be termed direct damages. Pursuant to R.C. 3937.18, the insured's right to recover loss depends on his legal right to recover the damages. It is *independent* of the insured person's status as a *resident relative* or *the injured person's own right to coverage under the policy." Id.* at 435, fn. 3. (Emphasis added.)

As a result, where separate and independent causes of action arise from injuries caused by an uninsured motorist and such injuries are covered by the uninsured motorist provision in an automobile insurance policy, the policy limits applicable to uninsured motorist coverage will be available to each cause of action. Were this not the rule, appellant could conceivably be in the position of having less coverage than he paid for, despite the fact that appellant has individual claims arising from his son's accident which are covered by the policy. Appellant is therefore entitled to uninsured motorist coverage of up to $600,000 in his individual claim and up to $600,000 for the claim asserted on behalf of his son. Accordingly, the judgment of the court of appeals is reversed as to this issue.

*Judgment reversed in part*
*and affirmed in part.*

KOEHLER, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER and HOLMES, JJ., dissent in part.

KOEHLER, J., of the Twelfth Appellate District, sitting for W. BROWN, J.

HOLMES, J., dissenting in part. Although I concur in that part of the majority opinion dealing with the issue of stacking medical expense coverage, I must dissent as to the other issues.

The law as pronounced in *Weemhoff* v. *Cincinnati Ins. Co.* (1975), 41 Ohio

St. 2d 231 [70 O.O.2d 248], remains valid today as applied to insurance policies containing uninsured motorist coverage. The syllabus in *Weemhoff* clearly, and soundly, proclaimed the right of an insurance company to set forth terms within its policies which provide a limitation on liability to a certain amount "per person" on each vehicle where numerous automobiles are insured, and that limitation could not be "stacked" to provide coverage in excess of the amount stated in the policy.

In my view, *Weemhoff* is applicable here in that it does not violate the intent and meaning of R.C. 3937.18. In the present case, there is no denial of uninsured motorist coverage to the insured under the policy which covers a number of automobiles. There is only the clear and reasonable limitation upon the amount of such coverage as it would apply to one person using one of the automobiles. How this limitation constitutes a violation of the philosophy of the uninsured motorist law completely escapes me.

When Carroll W. Lewis secured the insurance coverage from Auto-Owners it is safe to assume that he intended to obtain and purchase $100,000 in uninsured motorist coverage. This sum is specifically what he contracted to purchase and is clearly listed in the declarations page as being the coverage provided. Contrary to the assertion of the appellant herein, it is not reasonable to conclude that he expected to receive $600,000 in uninsured motorist coverage when he purchased this contract of insurance.

It must be pointed out that the insured, having paid additional premiums on a number of automobiles as covered in the policy, is not being penalized if only allowed the single maximum policy limit. He would be getting value received for premiums paid. The company has indeed given *quid pro quo* for the additional pro-rata premium charged, in that the exposure to risk as covered was proportionately increased with the possible use by each automobile by other "insured" persons within the definition of the policy. The policy covered not only Carroll W. Lewis, but also his spouse and all relatives of either, while residents of the same household, and any person using one of the automobiles with the permission of the named insured.

There are a great number of state courts which have considered and rejected the conclusion as reached by the majority here, that an insured is entitled to multiple dipping into uninsured motorist coverage merely because of a number of premiums being paid upon a number of vehicles. See Annotation, Combining or "Stacking" Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured (1983), 23 A.L.R. 4th 12, and cases cited therein.

The same concepts of contract law may reasonably be advanced as to the issue of stacking of the maximum policy recovery amount both for the appellant's personal damages for medical expenses and loss of services of his son, and the personal injury damages as claimed for his son. The parties have agreed and entered into a fair, clear and lawful contract which limits the amount of recovery by those who are insured for each "occurrence" involving one of the covered automobiles. The policy does not limit more than

one claim being filed per occurrence. The policy permits an uninsured motorist claim being brought by Lewis for his personal losses. It also allows a representative action to be brought on behalf of the son for his injuries. However, the contract may lawfully and reasonably place a maximum limitation for which the company shall be liable under the contract for any and all such claims by any and all persons for the injury to one person in any occurrence.

The case of *Sexton* v. *State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St. 2d 431 [23 O.O.3d 385], is not specifically applicable in this situation, in that it involved the question of a parent's right to recover derivative damages under the parent's uninsured motorist coverage. Such is not the case here. *Sexton* did not involve the right of recovery of double benefits or multiple benefits by way of stacking policy amounts as was presented by this appeal.

It would appear that the majority opinion here will place Ohio virtually alone among the states on the issues presented. Other states which have addressed such issue have held that claimants are only entitled to single limitation coverage regardless of how many different persons have claims as a result of bodily injury to any one person. See *Moomaw* v. *State Farm Mut. Auto. Ins. Co.* (S.D. W.Va. 1974), 379 F. Supp. 697; *Arguello* v. *State Farm Mut. Auto. Ins. Co.* (1979), 42 Colo. App. 372, 599 P. 2d 266; *Florida Ins. Guaranty Assn.* v. *Cope* (Fla. App. 1981), 405 So. 2d 292; *Mackoul* v. *Fidelity & Cas. Co. of New York* (Fla. App. 1981), 402 So. 2d 1259; *Biondino* v. *Southern Farm Bureau Cas. Ins. Co.* (Fla. App. 1975), 319 So. 2d 152; *Harris* v. *Security Ins. Group* (1976), 140 N.J. Super. 10, 354 A. 2d 704.

Accordingly, I would affirm the judgment of the court of appeals on these issues.

LOCHER, J., concurs in the foregoing opinion.